## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE:<br><br>KAL FREIGHT INC., ET AL.,<br><br>DEBTOR.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>Jointly Administered |
| KAL FREIGHT INC., ET AL.,<br><br>Plaintiff,<br><br>vs.<br><br>SIKANDER SINGH RANDHAWA, DHARMINDER SINGH RANDHAWA, RB REALTY INVESTMENTS, LLC, 1000798196 ONTARIO, INC.,<br><br>Defendants, | Adv. Pro. No.  25-03048<br><br>[Filed concurrently with Declaration of J. Nolan] |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Plaintiff herein, the KAL GUC Liquidating Trust (the "Liquidating Trust"), hereby

opposes (the "Opposition") Defendant's *Motion to Dismiss Plaintiff's First Amended Complaint*

(the "Motion"), filed by defendants Sikander Randhawa, ("Sikander"), Dharminder Randhawa

("Dharminder"), RB Realty Investments ("RB Realty"), and 1000798196 Ontario, Inc. (Ontario,

Inc. and, collectively, "Defendants").  In support of its Opposition, the Liquidating Trust

respectfully submits the following Memorandum Of Points and Authorities.

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

# **TABLE OF CONTENTS**

<u>Page No</u>.

PRELIMINARY STATEMENT .................................................................... 1

ARGUMENT ............................................................................................. 3

I.  IN BOTH THE PREFERENCE AND CONSTRUCTIVE FRAUD CAUSES OF ACTION, THE FAC IDENTIFIES THE REAL PROPERTY WHICH CONSTITUTES THE ONE-YEAR AND TWO-YEAR TRANSFERS WITH SPECIFICITY, THE DEBTOR'S INTEREST IN IT, AND THE FACTUAL ASSERTIONS SURROUNDING ITS CONVEYANCE. ..................................................................................... 4

   A.  The FAC Properly Places The Defendants On Notice Of The Transfers, And The Facts To Prepare A Defense ........................................................... 4

   B.  The FAC Pleads Facts Evidencing That The $6.5 M Transferred To The Defendants Was More Than They Would Have Received In A Hypothetical Chapter 7 Case. ................... 5

II  THE FAC PLEAD FACTS SUFFICIENT TO SUPPORT A CLAIM FOR CONSTRUCTIVE FRAUDULENT CONVEYANCE UNDER FEDERAL AND CALIFORNIA LAW. ............ 8

   A.  The FAC Properly Alleges The Conveyances Were Made For No Payment Or Value...... 8

III. INSIDERS RELEASING EACH OTHER'S BAD ACTS IS NOT REASONABLY EQUIVALENT VALUE TO UNSECURED CREDITORS. .................................................. 10

   A.  The Assertion That The Executives Can Immunize Recovery Of The Rancho Cucamonga Property From Creditors By Recording Title In The Name Of The Other Executive Is Nonsensical. .................................................................................11

   B.  The Factual History Outlined Within The FAC Supports The Trustee's Pleading Of Insolvency. ............................................................................... 12

IV  THE FAC PROPERLY ALLEGES THE RIGHT TO CLAWBACK AND RECOVER AVOIDED TRANSFERS ................................................................... 17

V.  NUMEROUS FACTS STATE A PLAUSIBLE CLAIM FOR THE ESTABLISHMENT OF FIDUCIARY DUTIES OWED BY THE DEFENDANTS TO THE DEBTORS AND THEIR BREACH ................................................................................ 18

   A.  The FAC properly Pleads Facts Establishing Fiduciary Duties Owed by The Randhawas to the Debtor. ............................................................................. 18

   B.  Fiduciary Duties Are Breached When Insiders Enter Into Self-Interested Transactions Unfair To The Debtor, Concealing And Absolving Each Others Bad Acts, And Diverting Corporate Assets In Order To Enrich Themselves. ......................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*2 Wolcott v. Sebelius*,
    635 F.3d 757, 763 (5th Cir. 2011) ........................................................................... 7

*Anthony v. Chevron U.S.A Inc.*,
    2023 U.S. Dist. LEXIS 178721, 2023 WL 6464756 (E.D. La Oct. 4, 2023) ............................ 3

*Arete Creditors Litig. Trust v. TriCounty Fam. Med. Care Grp., LLC (In re Arete Healthcare LLC)*,
    2022 Bankr. LEXIS 322, Adv. No. 21-05079-cag, (Bankr. W.D. Tex. Feb.7, 2022).......... 4, 5, 8

*Ashcroft v. Iqbal*,
    556 U.S. 662, 672, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)............................................ 3, 13

*Brickley v. ScanTech Identification Beams Sys., LLC*,
    566 B.R. 815 (W.D. Tex. 2017) ........................................................................... 18

*Browning Mfg. v. Mims (In re Coastal Plains, Inc.*
    179 F.3d 197 (5th Cir. 1999)............................................................................. 20, 21

*City of Port Arthur v. Daimler Buses N.C., Inc.*,
    2017 U.S. Dist. LEXIS 144874 (E.D.Tex. 2017) ................................................................. 3

*Conley v. Gibson*,
    355 U.S. 41 (1957)................................................................................................ 3

*Emerald Capital Advisors Corp. v. Bayerische Moteren Werke Aktiengesellerschaft (In re Fah Liquidating Corp.*)
    572 B.R. 117 (Bankr. D. Del. 2017) ........................................................................... 13

*Gearhart Indus. v. Smith Int'l*,
    741 F. 2d 707  (5th Cir. 1984)............................................................................. 21, 22

*Golden v. Clay Lacy Aviation, Inc.* (*In re Aletheia Research & Mgmt., Inc.*),
    BAP No. CC-15-1081-KiTaKu, 2015 Bankr. LEXIS 4145, 2015 WL 8483728 (9th Cir. BAP, Dec. 10, 2015)................................................................................................ 10

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
    155 F. Supp. 3d 670 (S.D. Tex. 2015)....................................................................... 3, 23

*Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*,
    658 F.3d 500 (5th Cir. 2011) ........................................................................... 13

*Halperin v. Moreno (In re Green Field Energy Servs.)*
    2015 Bankr. LEXIS 2914 (Bankr. Del. Aug. 31, 2015).......................................................... 7

*Harwood v. FNFS, Ltd.*,
    427 B.R. 392 (E.D. Tex. 2010) ........................................................................ 18, 20

*Heller Ehrman LLP. v. Jones Day (In re Heller Ehrman, LLP)*, 2013 Bankr. LEXIS 889 .......... 15

*Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.)*,
    471 F.3d 977 (9th Cir. 2006) ................................................................................ 9

*In re Atomica Design Grp., Inc.*,
    556 B.R. 125 (Bankr. E.D. Pa. 2016) ................................................................... 14

*In re AWTR Liquidation Inc.*,
    548 B.R. 300 (2016) .......................................................................................... 14

*In re Bay Plastics, Inc.*,
    187 B.R. 315 (1995) .......................................................................................... 14

*In re Fah Liquidating Corp.*,
    572 B.R. 117 (Bankr. D. Del. 2017) ..................................................................... 17

*In re Freeman–Clay*,
    578 B.R. 423 (2017) .......................................................................................... 19

*In re Guevarra*,
    638 B.R. 120 (B.A.P. 9th Cir. 2022) .................................................................... 11

*In re Mercury Companies, Inc.*,
    527 B.R. 438, 449 (Dist. Co., 2015) ..................................................................... 11

*In re Northern Merchandise, Inc.*,
    371 F.3d 1056 (2004) ........................................................................................ 11

*In re Oconee Regional Health Systems, Inc.*,
    621 B.R. 64 (Bankr. M.D. Ga. 2020) ..................................................................... 7

*In re Perry*,
    394 B.R. 852 (Bankr. S.D. Tex. 2008) .................................................................. 19

*In re Prototype Eng'g & Mfg.*,
    2019 Bankr. LEXIS 4036 (Bankr. CD Cal. 2019) ................................................ 13, 17

*In re PWS Holding Corp.*,
    303 F.3d 308 (3rd Cir. 2002) ................................................................................ 9

In re PWS Holding Corp.,
    538 U.S. 924 (2003) ............................................................................................ 9

*In re Schwarzkopf*,
    626 F.3d 1032 (2010) ........................................................................................ 12

*In re United Energy Corp.*,
   944 F.2d 589 (9th Cir. 1991) ........................................................................... 12, 14

*Jenkins v. Tomlinson (In re Basin Resources Corp.)*,
   182 B.R. 489 (Bankr. ND Tex. 1995) .................................................................... 21

*Johnson v. Brewer & Pritchard, P.C.*,
   73 S.W.3d 193 (Tex. 2002) ..................................................................................... 20

*Kanter v. Read*,
   309 Cal Rptr. 3d 375 (2nd Dist. 2023*)* ................................................................. 22

*Lormand v. U.S. Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) .................................................................................... 3

*Lynch v. Cunningham*,
   131 Cal.App. 164 (1933) .........................................................................................11

*Molex, Inc. v. Nolen*,
   759 F.2d 474 (5th Cir. 1985) ................................................................................... 18

*Moriarty v. KLVAC (In re Postrock Energy Corp.)*,
   595 BR 858 (Bankr. W.D. Okla. 2019) ............................................................... 9, 17

*Navigant Consulting, Inc. v. Wilkinson*,
   508 F.3d 277 (5th Cir. 2007) .................................................................................. 18

*Newell v. Superior Court of Los Angeles County*,
   107 Cal.App.5th 728 (2024) .................................................................................... 12

*Perez v. Bui (In re Tenerio)*,
   BAP No. CC-17-1102, 2018 Bankr. LEXIS 456, 2018 WL 989691 (9th Cir. BAP 2018) ....... 10

*School of Business v. Symington*,
   51 F.3d 1480, 1484 (9th Cir. 1995) .......................................................................... 3

*Seidel v. MSouth Equity Partners III, L.P. (In re Goodman Networks, Inc.)*,
   2025 WL 73072 (Bankr. N.D. Tex. 2025) .............................................................. 17

*Stanley v. US Bank Nat'l Ass'n (In re TransTexas Gas Corp)*
   597 F.3d 298 (5th Cir. 2010) .................................................................................. 10

*Steinhart v. Cnty. of Los Angeles*,
   47 Cal. 4th 1298 (2010) .......................................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ....................................... 7

*Valley Ridge Roofing and Constr., LLC v. Silver State Holdings,*
   2020 Bankr. LEXIS 3531, 2020 WL 7414434 (Bankr. N.D. Tex. 2020) .................................. 19

*Weiss v. Arabella Exploration Inc. (In re Arabella Petroleum Co., LLC,*
   647 B.R. 851 (Bankr. W.D. Tex. 2022) ................................................................................. 21

*Zehr v. Osherow,*
   No. 5:18-CV-355-DAE, 2019 U.S. Dist. LEXIS 8822, 2019 WL 266973 (W.D. Tex. Jan. 17,
   2019) ...................................................................................................................................... 10

## Statutes

11 U.S.C. §507(a) ........................................................................................................................ 7

11 U.S.C. §541(a)(1) .................................................................................................................... 11

11 U.S.C. §547(b)(5) ............................................................................................................... 5, 8

11 U.S.C. §550 ...................................................................................................................... 17,18

11 USC § 548(a)(1)(B) ................................................................................................................ 14

11 U.S.C §548(d)(2)(A) .............................................................................................................. 17

28 U.S.C. §3302(b) ..................................................................................................................... 14

Cal. Civ. Code §3439 .................................................................................................................. 14

Cal Civ. Code §3439.02 .............................................................................................................. 14

Cal. Civ. Code §3439.02(a) ......................................................................................................... 14

Cal. Civ. Code §3439.04(a)(2)(A)-(B) ....................................................................................... 15

## Rules

Fed. R. Bankr. P. 3001(f) ............................................................................................................ 19

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 3,7,10,17

## Other Authorities

Wright & Miller, Federal Practice & Procedure Civil § 1357 (3d 2006) ....................................... 3

UFTA § 2(a) ................................................................................................................................. 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

1.      This adversary proceeding is brought against the founding members, executives, and insiders of the Debtors. The two families, the Singhs and the Randhawas, jointly controlled and operated the Debtors. When it was apparent the Debtors were no longer paying vendors or filing tax returns, and were riddled with fraud, the pair of executive teams threatened one another. With actual knowledge of the pervasive fraud and insolvency, Defendants agreed among themselves to strip the Debtors of their remaining assets for their sole benefit.  In excess of $7 million in real and personal property (the "Transfers") was diverted out of the Debtors' estate only months prior to the bankruptcy. Creditors were left with an administratively insolvent debtor devoid of operating assets and collateral.

2.      Defendants Sikander and Dharminder Randhawa, move to dismiss the Preferential and Constructive Fraudulent Transfers causes of action, claiming that insufficient facts are pled to establish various elements to each claim. The challenge to the Preference Cause of Action (Third Claim for Relief) fails as the First Amended Complaint ("FAC") alleges facts sufficient to support claims that Defendants, who were insiders, received transfers that were preferential as to general unsecured creditors who will receive no anticipated distribution. The single case cited in the Motion has no application to the present facts.

3.      The challenge to the Constructive Fraudulent Transfer causes of action (Fourth and Fifth Claims for Relief) is equally frivolous. The FAC sets forth a detailed factual narrative, framed by specific debtors, times, dates, events, and instrument numbers as supported by filed claims, public documents and Defendants' own admissions, hardly "naked assertions of fact", as asserted in the Motion. The Motion references no case law to support its specious argument that

a grant deed must be attached to a complaint, or documentation attached to demonstrate less than "reasonably equivalent value" or insolvency. Incredulous legal propositions such as a trustee cannot challenge a fraudulent transfer of real property purchased with the Debtors' funds simply because insiders parked title in one of their names are assertions submitted without a legal basis.

4.     Lastly, the Motion claims that the Breach of Fiduciary Duty Cause of Action (First Claim For Relief) must be dismissed as no facts are pled to state a "plausible" claim of fiduciary duties owed by insiders who managed and dictated the corporate affairs of the Debtor. At the pleading stage, the Motion erroneously claims such allegations must be "documented". Yet, the Defendants filed claims, attached to the FAC, document Defendants' role in forming a partnership with the Singhs to establish, control, and manage the Debtors' business. It is black letter law in Texas and California, that officers and those <u>directing</u> the Debtors' business, owe fiduciary duties of <u>obedience</u>, <u>loyalty</u> and <u>due care</u> to the companies they serve. The diversion of the Debtors' property in exchange for <u>no payment</u>, only a mutual agreement to turn a blind eye to each others' bad acts, represents a textbook case of breach of each of the aforementioned duties.

5.     As was evident in the plan and disclosure statement process, the Debtors were unquestionably riddled with fraud. Discovery should proceed to document exactly what occurred between the insiders who managed the Debtors' affairs so as to leave creditors with little to no remaining assets.

## ARGUMENT

6.     In the Fifth Circuit, as elsewhere, at the Rule 12(b)(6) stage a court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not evaluate the plaintiff's likelihood of success". *City of Port Arthur v. Daimler Buses N.C., Inc*., 2017 U.S. Dist. LEXIS 144874, *7 (E.D.Tex. 2017) The pleading standard Rule 8 announces does not require detailed factual allegations, but simply more than "an unadorned, the defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 672, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Twombly).

7.     A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009). A complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) *School of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When "particular information defendant is seeking is within defendant's own knowledge", this factor mitigates in favor of denying the motion." *Anthony v. Chevron U.S.A Inc*., 2023 U.S. Dist. LEXIS 178721, *6, 2023 WL 6464756, at *2 (E.D. La Oct. 4, 2023).  Even post *Ashcroft v. Iqbal, infra*, motions to dismiss under Rule 12(b)(6) are still viewed with disfavor, and rarely granted as courts favor the determination of matters on the merits. *Greater Houston Transp. Co. v. Uber Techs., Inc*., 155 F. Supp. 3d 670, 681(S.D. Tex. 2015)  As a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted by the district court "only in the relatively unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief. . . .In a real sense, the plaintiff has pleaded himself or herself out of federal court." Wright & Miller, Federal Practice & Procedure Civil § 1357 (3d 2006)

8.     The FAC details the manipulation of the Debtors' business by their insiders, the Singhs and the Randhawas, who owned and controlled the Debtors' business. The Transfers outlined in the FAC diverted millions out of the estate for no replaceable value. Defendants are on fair notice of the allegations against them such that they can prepare a defense.

I.     **IN BOTH THE PREFERENCE AND CONSTRUCTIVE FRAUD CAUSES OF ACTION, THE FAC IDENTIFIES THE REAL PROPERTY WHICH CONSTITUTES THE ONE-YEAR AND TWO-YEAR TRANSFERS WITH SPECIFICITY, THE DEBTOR'S INTEREST IN IT, AND ALLEGES THE FACTS SURROUNDING ITS CONVEYANCE.**

A.     The FAC Properly Places The Defendants On Notice Of The Transfers, And The Facts To Prepare A Defense

9.     Defendants argue that the FAC does not allege that the One Year Transfer involved the Debtor's property, and that no factual assertions identify the Debtor's property involved. To support their argument, the Motion directs the Court to a single credit card case involving seven pages of transactions wherein neither the cardholder nor the debtor were identified. Patently, the case has no application to these facts.

10.     The Motion directs the Court to, *Arete Creditors Litig. Trust v. TriCounty Fam. Med. Care Grp., LLC (In re Arete Healthcare LLC)*, 2022 Bankr. LEXIS 322, Adv. No. 21-05079-cag, (Bankr. W.D. Tex. Feb.7, 2022), a case Defendants claim involves a "similar chart" as to the present facts.  [Motion, pg. 5] It does not.

11.     *In re Arete Healthcare LLC,* involved an exhibit to the complaint referencing in excess of 400 transactions. (See Exhibit B from the *In re Arete Creditors Litig Trust* Complaint, attached to the Decl. of Jeffrey Nolan, as **Exhibit 1**). The *In re Arete Healthcare LLC* court concluded it was unclear if in fact an Amex card was involved, if it was the debtor's card, and who paid it. *Id.,* 2022 Bankr. LEXIS 322 at n. 7. In this context, the court stated: "simply

including an exhibit of transactions that included the Debtor's name in a "Paid by" column puts a

defendant on no more notice than merely reciting the element."

12.     Unlike *In re Arete Healthcare LLC*,, the FAC here involves 2 transfers, not 400,

and alleges that Debtor Kal Freight, Inc. was "the record owner" of the real property as

specifically identified in Exhibit A and in the FAC. [FAC, ¶¶57, 65, 67] The FAC alleges the

real property was in the name of Debtor Kal Freight, Inc. and "would have been part of the

Debtor's estate had it not been transferred before the bankruptcy". [FAC, ¶57] For the Moreno

Valley Property, Exhibit A to the FAC identifies the instrument number, doc # 2024-0230587

which is the August 1, 2024, deed identifying the record owner as Debtor, Kal-Freight.

Defendants accessed the grant deed described in "Two Year Transfer" which they include in the

Motion, thereby demonstrating the FAC is sufficiently specific as to the transactions in question.

The Motion provides no case law to support the assertion a complaint must attach a grant deed

rather than describe the transfer with specificity.

13.     The Motion claims the FAC contains "only conclusory statements for which

Plaintiff offers no factual support". Yet, unlike the situation in *In re Arete Healthcare LLC*,

wherein the court noted, "the amended complaint did not allege the Debtor used its own property

to make the transfers", the FAC here <u>does allege</u> the Debtor Kal Freight Inc.'s property was

transferred. *Id.* at *23. [FAC, ¶¶29, 33, 34]

     B.    <u>The FAC Pleads Facts Evidencing That The $6.5 Million Transferred To The</u>
            <u>Defendants Was More Than They Would Have Received In A Hypothetical</u>
            <u>Chapter 7 Case.</u>

14.     The Motion challenges the preference Cause of Action on another element,

§547(b)(5) claiming: that the Liquidating Trustee (a) "fails to allege" <u>and</u> (b) fails to "plead any

facts" to support the element that the One Year Transfer allowed the Defendants to receive more

than in a Chapter 7 hypothetical liquidation or if the transfer had not been made. [Motion, pg. 6].
The assertion is not credible.

15.     The preference cause of action in the FAC <u>alleges,</u> "Based on a review of the
Debtors' schedules, the filed claims, the pending lawsuits and claims made therein, the One Year
Transfer enabled the Defendants to receive more than the Defendants would have received if (i)
the Debtors' chapter 11 cases were instead cases under chapter 7 of the Bankruptcy Code; (ii) the
transfers and/or payments had not been made; and (iii) the Defendants received payment on
account of the debt in accordance with the provisions of the Bankruptcy Code". (FAC, ¶62).  As
factual support, the FAC alleges that in 2023, the Debtors took delivery of millions of dollars
worth of trailers and equipment and entered into prepetition vehicle financing facilities that
obligated the Debtors to liabilities in excess of $100,000 million. [FAC, ¶22]. Vehicle
manufacturers that sold and delivered trailers in the first and second quarters of 2023 went
unpaid. *Id*. The Debtors failed to file state and federal tax returns for the 2023 and 2024 tax years
and were delinquent in payments owed to such taxing authorities for tax years 2021 and 2022,
which sums exceeded $10 million. [FAC, ¶22] Assets of the Debtors subsequently disappeared
or were converted. [FAC, ¶¶23, 24, 43] On February 28, 2024, Defendant retained an attorney
and asserted to federal authorities that the Debtor defrauded financial institutions in excess of
$250 million, that the business had been destroyed and a receiver must be appointed. [FAC,
¶¶25, 26] These allegations are not "artful pleading" pleading by any stretch of the imagination.
Defendants filed proofs of claim, under penalty of perjury, documenting the fraud and the
request for a receiver. (POC, 53-1, §4-5; POC 55, §4-5; attached to the FAC as Exhibits C and E)
Unsecured creditors are not entitled to a distribution until secured and priority debts are paid in

full and the facts pled demonstrate secured creditors and priority claimants remain unpaid. 11 U.S.C. §507(a).

16.      Furthermore, the FAC alleges: "Based on a review of the Debtors' schedules, the filed claims, the pending lawsuits and claims made therein, the One Year Transfer enabled the Defendants to receive more than the Defendants would have received if (i) the Debtors' chapter 11 cases were instead cases under chapter 7 of the Bankruptcy Code; (ii) the transfers and/or payments had not been made; and (iii) the Defendants received payment on account of the debt in accordance with the provisions of the Bankruptcy Code". [FAC, ¶62] Whether Defendant received more by way of the subject transfers than it would have under a Chapter 7 liquidation is a factual question inappropriate for resolution on a motion to dismiss. *In re Oconee Regional Health Systems, Inc.*, 621 B.R. 64, 68 (Bankr. M.D. Ga. 2020)

17.      Even a cursory review of the Debtors' schedules as referenced demonstrate that Kal Freight, Inc. filed for bankruptcy with minimal cash or cash equivalents on hand and the Debtor Kal Freight, Inc. listed assets of $386 million, of which $188 million was intercompany receivables and $39 million was open account receivables.[2] See Docket No. 465. Less intercompany debts and open receivables, Kal Freight, Inc. had assets of $159 million and prepetition vehicle financing debt (not including factor or revolving facilities) of more than $313 million.  The remaining Debtors evidenced similar amounts of debt.  For example, Kal Trailers & Leasing listed total assets of $148 million, of which $135 million was intercompany receivables, against debts of more than $230 million. See Docket No. 468.[3]

---

[2] Nonetheless, when ruling on a 12(b)(6) motion, the Court may consider matters which a court may take judicial notice. *2 Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations and quotations omitted); see also *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)

[3] The Debtors' Plan is entirely consistent with the Schedules, i.e. no distribution to unsecured creditors.  The Plan included a liquidation analysis which stated; "No distribution to priority or unsecured creditors is anticipated under a Chapter 7 liquidation." (See Decl. Nolan, **Exhibit 2**, Liquidation Analysis, Case 24-90614; Dkt No. 982); *Halperin*

18.     The One Year Transfer resulted in Defendants receiving $6.5 million in the summer of 2024, while secured lenders filed proofs of claim owed in excess of $100 million with the collateral converted or compromised. The FAC properly pleads facts sufficient to satisfy Section 547(b)(5).

## II    THE FAC PLEAD FACTS SUFFICIENT TO SUPPORT A CLAIM FOR CONSTRUCTIVE FRAUDULENT CONVEYANCE UNDER FEDERAL AND CALIFORNIA LAW.

### A.    The FAC Properly Alleges The Conveyances Were Made For No Payment Or Value.

19.     In attacking the constructive fraud causes of action (the Fourth and Fifth claims for relief), the Motion repeats the argument, made earlier against the Preference cause of action, that the FAC fails to identify the Debtor and the property subject to avoidance. (Motion, pg. 7). The Motion again rests on the previously discussed credit card case, *In re Arete Healthcare LLC*. The case is equally inapplicable to the arguments attacking Fourth and Fifth claims for relief.

20.     Next, the Motion asserts that the Two Year Transfers (FAC, Exhibit B) are deficient simply because the FAC identifies the property address, legal description, transfer date and surrounding facts for the Two-Year Transfer in an attachment. Yet Defendants had no difficulty utilizing Exhibit B to locate and access the real property records, inasmuch as they attach the grant deed in support of the Motion. The detail in the FAC as to the transfers is sufficiently specific to provide fair notice to the Defendants of the transactions.

21.     The Motion asserts that the FAC does not "allege the Debtors received less than equivalent value". (Motion, pg. 9) The FAC could not be any more clear that the Debtor received no payment, no value and the transaction was the byproduct of an insider transaction.

---

*v. Moreno (In re Green Field Energy Servs.)* 2015 Bankr. LEXIS 2914, *49 (Bankr. Del. Aug. 31, 2015) (Debtors' liquidation analysis in the plan concluded that general unsecured creditors of the debtors' estate would receive a 0% to 10% recovery in a chapter 7 liquidation.).

22.     The purpose of Section 548 is to protect creditors from transactions that are designed to, or have the effect of, unfairly draining the pool of assets available to satisfy creditors' claims, or that dilute legitimate creditor claims at the expense of false or lesser claims. *In re PWS Holding Corp*., 303 F.3d 308, 313 (3rd Cir. 2002), cert. denied, 538 U.S. 924 (2003) Courts recognize that section 548 serves the goal of increased creditor dividends by allowing the estate representative to avoid the offending transactions, and bring the property back into the debtor's estate for distribution to creditors. *Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co*.), 471 F.3d 977, 1008 (9th Cir. 2006).

23.     The Fourth and Fifth Causes of Action allege that "the Debtor **did not receive any payment**, **value**, and/or **did not receive reasonably equivalent value** in exchange for the One Year Transfer as set forth in Exhibit A, and the Two Year Transfers, as set forth in Exhibit B to the FAC. [FAC, ¶¶66, 71] (emphasis added). Instead, valuable property of the Debtors was diverted to Defendants for the benefit of those "other than the debtors". [*Id*.] *Moriarty v. KLVAC (In re Postrock Energy Corp.),* 595 BR 858, 868(Bankr. W.D. Okla. 2019) (Courts have long recognized that transfers to benefit non-debtors or even affiliates of debtors provide no direct benefit to the debtor). Even the grant deed referenced in the FAC, and which Defendants' attach to the Motion support the assertion of an insider deal for no value to creditors. The deed states, "Conveyance Given For No Value". (Dkt no. 19, Motion, Exhibit "A") Similarly, the FAC provides background facts surrounding the depletion of the estate: the parties to the One Year Transfer were partners or insiders who operated the Debtors and were in a dispute alleging fraud against one another. [FAC, ¶¶22-27] The transfer of the corporate assets of the Debtors was not the subject of corporate formalities, due diligence, or determination as to fairness to the Debtor. [FAC, ¶31]

24.     In *In re Tenerio*, cited in the Motion, confirms the allegations in the FAC pass

legal muster. The *Tenerio* court found that the plaintiff's allegation that the debtor received

nothing in return for a transfer was sufficient to adequately plead a transfer for less than

reasonably equivalent value. *Perez v. Bui (In re Tenerio),* BAP No. CC-17-1102, 2018 Bankr.

LEXIS 456, 2018 WL 989691 (9th Cir. BAP 2018) See also *Golden v. Clay Lacy Aviation, Inc.*

(*In re Aletheia Research & Mgmt., Inc.*), BAP No. CC-15-1081-KiTaKu, 2015 Bankr. LEXIS

4145, 2015 WL 8483728, at *8 (9th Cir. BAP, Dec. 10, 2015) (holding that "factual findings as

to reasonable equivalent value are not appropriate in the context of a motion to dismiss under

Civil Rule 12(b)(6)," because the issue is "clearly a question of fact.")[4].

## III.   INSIDERS RELEASING EACH OTHER'S BAD ACTS IS NOT REASONABLY EQUIVALENT VALUE TO UNSECURED CREDITORS.

25.     The Motion claims that paragraphs 29 and 30 of the FAC, somehow establish that

the transfers were made for reasonably equivalent value precluding the case going forward at the

pleading stage. [Motion, pg.10]  Unsurprisingly, the contention that executives can manufacture

"equivalent value" by releasing each other from bad acts so as to insulate an insider transaction

from avoidance is without legal support.

26.     Reasonably equivalent value under 11 USC §548 must be determined from the

standpoint of the estate's creditors rather than from the perspective of the debtor or transferee.

The primary focus of Section 548 is on the net effect of the transaction on the debtor's estate and

the funds available to the unsecured creditors". *Stanley v. US Bank Nat'l Assn )In re TransTexas

Gas Corp.)*,  597 F3d. 298 (5th Cir. 1995); *In re Northern Merchandise, Inc.*, 371 F.3d 1056

(2004) (Fair market value of what the debtor gave and received must be valued objectively and

---

[4]  *Zehr v. Osherow*, No. 5:18-CV-355-DAE, 2019 U.S. Dist. LEXIS 8822, 2019 WL 266973, at *14 (W.D. Tex. Jan. 17, 2019) whether reasonably equivalent value has been given for a transfer is "fact-intensive".

from the perspective of the debtor's creditors, without regard to the subjective needs or perspectives of the debtor or transferee). This standard prevents debtors from justifying transfers based on their particular business needs or strategic considerations that may not translate into measurable value for creditors. *In re Mercury Companies, Inc.*, 527 B.R. 438, 449 (Dist. Co., 2015).

27.     The FAC makes clear that the executives diversion of assets harmed creditors. [FAC, ¶¶54, 66] The insiders release of one another does not replace the transfer of millions of dollars in property.

A.     <u>The Assertion That The Executives Can Immunize Recovery Of The Rancho Cucamonga Property From Creditors By Recording Title In The Name Of The Other Executive Is Nonsensical.</u>

28.     Defendants claim that the Rancho Cucamonga Property, which is subject to avoidance as a Two Year Transfer, cannot be challenged as the grant deed identifies the Debtors' senior executive officer, Kalvinder Singh, as the grantor. The argument assumes that insiders can determine what is, and is not, an "interest of the Debtors' in property". The argument ignores established law.

29.     California state and federal courts consistently recognize that both legal and equitable interests in real property exist simultaneously. In fact, the ownership of the equitable estate is regarded by equity as the real ownership, and the legal estate is, as has been said, no more than the shadow always following the equitable estate.[5] *Lynch v. Cunningham,* 131 Cal.App. 164 (1933) Federal bankruptcy courts also note the two separate interests. See 11 U.S.C. §541(a)(1); *In re Guevara*, 638 B.R. 120, 132–33 (B.A.P. 9th Cir. 2022) (legal title

---

[5] Section 541(a)(1) of the Bankruptcy Code's broad definition of "[p]roperty of the estate" includes "all legal and equitable interests of the debtor in property *wherever located or by whomever held*." [Emphasis added] 11 U.S.C. § 541(a)(1)

verses an equitable interests). The Debtor maintains the beneficial ownership interest in the Rancho Cucamonga property despite whatever ploy the insiders concocted. *Steinhart v. Cnty. of Los Angeles*, 47 Cal. 4th 1298, 1319-20 (2010) (Transfer of bare legal title does not constitute a "change of ownership" for purposes of assessing ad valorem taxes on real property). The Ninth Circuit in *In re Schwarzkopf*, 626 F.3d 1032 (2010) confirmed that "under California law, trust beneficiaries hold an equitable interest in trust property and are 'regarded as the real owners of that property.'"

30.     Simply because the Singhs and Randhawas vested legal title to the real property in the name of Kalvinder Singh does not immunize the transaction from avoidance. Bankruptcy courts possess the power to delve behind the form of transactions and relationships to determine the substance. See, *In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir. 1991)

31.     The FAC properly pleads that the Two Year Transfer vested legal title to the Rancho Cucamonga property in the Debtor's senior executive. [FAC, ¶35]. Despite this fact, the Debtors were holders of all beneficial and equitable ownership interests in the property. [FAC, ¶35] The real property was purchased with the Debtor transferor's funds, maintained by the Debtor, and <u>held in trust</u> for the benefit of the debtor. [FAC, ¶65] See *Newell v. Superior Court of Los Angeles County*, 107 Cal.App.5th 728 (2024) ("When property is held in trust, 'there is always a divided ownership of property".)

32.     In discovery, the partners can explain why the Debtor's funds were utilized to purchase the property and why the executives diverted legal title to Mr. Singh. Discovery will assist the Court to determine what actually transpired with the Rancho Cucamonga property.

B.     <u>The FAC Sufficiently Alleges Insolvency.</u>

33.     The Motion contends that the FAC properly alleges insolvency but fails to establish a basis for concluding that the Debtors were insolvent under state and federal law. [Motion, pg. 7, 11]. The argument does not contend insolvency is "implausible", but that the facts pled in the FAC do not adequately support an inference of insolvency at the pleading stage.

34.     At the motion to dismiss stage, a complaint is to be read as a whole to determine if the allegations sufficiently state facts of financial condition. *Emerald Capital Advisors Corp. v. Bayerische Moteren Werke Aktiengesellerschaft (In re Fah Liquidating Corp.*) 572 B.R. 117, *20 (Bankr. D. Del. 2017) (*Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 507(5th Cir. 2011)). The FAC sets forth the events, facts, and documents, including admissions made by the Defendants evidencing the destruction of the Debtors' business, defrauding of secured creditors in excess of $200 million, improper conversion of the Debtors' assets (trucks & trailers), financial irregularities, and defrauding of financial institutions in excess of $250 million. [FAC, ¶¶22-28; ¶¶36-40]

35.     When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *In re Prototype Eng'g & Mfg.*, 2019 Bankr. LEXIS 4036, *8 (Bankr. CD Cal. Dec. 12, 2019) citing and quoting, *Ashcroft v. Iqbal*, 556 U.S. at 679. To determine whether a claim is plausible, a court should consider the complaint's factual allegations "together with all reasonable inferences" from the allegations. *Id.* at *9. Moreover, the "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Id.* "The relevant question . . . in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrants dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible. *Id.* A complaint need not be dismissed if it does

not include balance sheet specifics or other specific financial information so long as the face of the complaint allows the court to draw a reasonable inference of insolvency. *In re Atomica Design Grp., Inc.,* 556 B.R. 125, 166 (Bankr. E.D. Pa. 2016).

36.     Under 11 USC §548, the UFTA, and California Civil Code §3439, the test for satisfying insolvency are the same. *In re Bay Plastics, Inc.,* 187 B.R. 315 (1995) (explicitly holds that the legal standard for insolvency under California Civil Code § 3439 is the same as the test under federal law 11 USC § 548(a)(1)(B) for fraudulent conveyances. California Civil Code § 3439.02(a) and UFTA § 2(a) are "essentially the same". *In re United Energy Corp*., 944 F.2d 589 (9th Cir. 1991). California statutes incorporate all three standard tests of insolvency, and similar tests of balance sheet insolvency, cash flow insolvency, and inadequate capitalization. *In re AWTR Liquidation Inc*., 548 B.R. 300 (Bankr. C.D. Cal.2016). A debtor that is generally not paying debts as they become due, other than as a result of a bona fide dispute, is presumed to be insolvent. Cal Civ. Code §3439.02.[6]

37.     Under California law, a transfer is avoidable as a constructively fraudulent transfer and a Trustee may avoid any transfer of an interest of the debtor if the debtor (i) "without receiving reasonably equivalent value in exchange for the transfer," and the debtor **either**:

(A) Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B) Intended to incur, or believe or reasonably should have believed that the debtor would incur, debts, beyond the Debtor's ability to pay as they became due. §3439.04(a)(2)(A)-(B)

---

[6] 28 U.S.C. §3302(b)The federal statutory definition of "insolvency" by the United States to set aside or avoid fraudulent transfers for the purposes of the Federal Debt Collection Procedures Act includes the provision that a debtor who is generally not paying debts as they become due is presumed to be insolvent.

38.     Similarly, under California law, a debtor's inability or lack of plan to satisfy long-term debt is evidence "the debtor would incur, debts, beyond the debtor's ability to pay as they became due.". See *Heller Ehrman LLP. v. Jones Day (In re Heller Ehrman, LLP)*, 2013 Bankr. LEXIS 889, *37-38 (law firm had nothing more than hope to resolve Heller's long term obligations. . . and no present expectation to satisfy long term obligations does not satisfy objective test of § 3439.04(a)(2)(B) such that summary judgment on issue is proper.).

39.     The complaint alleges that the Debtors invested heavily in the acquisition of trucks and trailers post-COVID to meet pandemic related demand. [FAC, ¶¶18, 22] In 2023, the Debtors took delivery of millions of dollars worth of trailers and equipment and entered into prepetition vehicle financing facilities with at least 19 lenders that obligated the Debtors to liabilities in excess of $100,000 million. *Id*. The acquisition and title of the equipment acquired in 2022 and 2023 was surrounded by claims of malfeasance, fraud, cross-collateralization of assets and misappropriation of funds for non-business purposes. [*Id*.] Vehicle manufacturers who sold and delivered trucks and trailers in the first and second quarters of 2023 went unpaid despite continued promises by the Debtors to pay such debts in full. [*Id*.] The FAC demonstrates the Debtors were not paying their debts as they came due and had no ability to satisfy obligations of the manufacturers or to return their collateral in service of the debt.

40.     The FAC reference claims Nos. 177, 180, 182 and 338, evidencing debts incurred greater than $253M to vendors who supplied capital assets central to the operations of the Debtors: Daimler Truck Financial Services USA, Claim No. 338, $140,000,000; TBK Bank Claim No. 65, $88,880,758; CIMC Reefer Trailer, Inc. Claim No. 180 & 182, $5,940,331; and Vanguard National Trailer Corp. Claim No. 177, $18,325,971. [FAC, ¶22; a copy of claim numbers 65, 177, and 338, as attached to Decl. of Nolan, **Exhibit 3**]. Material vendors and

suppliers of the Debtors who delivered product were not being paid in the regular course of

business. [FAC, ¶22]. Besides not being paid, the FAC pleads that upon inspection at the

Debtors' facilities, collateral was missing or converted. [FAC, ¶43] The Debtors failed to file

state and federal tax returns for the tax years 2023 and 2024 and were delinquent in payments

owed to taxing authorities for tax years 2021 and 2022. [FAC, ¶22]  In fact, the California

Franchise Tax Board, filed claim nos. 207 and 227, § 507(a) priority tax claims in the amount of

$53,887,885, and $9,803,453 respectively in excess of  $63M. [FAC, ¶22, ft note 6; a copy of

claim numbers 207 and 227, as attached to Decl. J. Nolan, as **Exhibit 4**).

41.     The FAC pleads that internal strife between the partners led to the loss of clients

at the end of 2023, public allegations of fraud committed at the Debtors and arguments over the

necessity to obtain high interest hard money loans to pay business debts. [FAC, ¶23]

42.     On February 28, 2024, Dharminder Randhawa filed a complaint with the U.S.

Department of Justice advising of criminal activity occurring at the Debtors and the defrauding

of financial institutions "for over $250 million and it still continues". [FAC ¶25, See US DOJ

Complaint Form, attached to Decl. J. Nolan, **Exhibit 5**] The filed claims of Defendants,

referenced in the FAC, includes Defendants testimony under penalty of perjury that thousands of

assets of the Debtors are missing, involved in the fraud, and banks are being "ripped off" by the

Debtors. (Claim No. 53, attached to the FAC as Exhibit C, ¶4).

43.     Nothing in the FAC, suggests it is implausible to infer insolvency in the present

case.  While more detailed evidence may be required at trial, pleadings of delays, missing assets,

losses and setbacks impacting a debtor's business at time of the transfers is evidence of

insolvency. *In re Fah Liquidating Corp.*, 572 B.R. 117, *20 (Bankr. D. Del. 2017)[7]. Allegations of declining asset values, operating losses and allegation of primary obligor of 200M debt paints a plausible picture of insolvency at pleading stage. *Moriarty v. KLVAC (In re Postrock Energy Corp.),* 595 BR 858, 868 (Bankr. W.D. Okla. 2019). See e.g. *Seidel v. MSouth Equity Partners III, L.P. (In re Goodman Networks, Inc.*), 2025 WL 73072, *11-12 (Bankr. N.D. Tex. 2025) slip copy, Trustee's Complaint sufficiently alleges constructive fraudulent transfer under both § 548 and TUFTA,

> as the Debtor was not paying its debts to as they became due, and allegedly owed more than $80 million to creditors. The support can be found in the numerous allegations in the Complaint regarding the Debtor's financial condition. In short, the alleged transfer involved parties that were all controlled by Frinzi, the note was given to the Debtor in exchange for $44 million only to legitimize the transfer rather than provide the Debtor with any real value, and all of this occurred during the Debtor's alleged insolvency. The Court finds this particular combination of transfer details and factual allegations surrounding the initial transfer is enough to survive a Rule 12(b)(6) motion under Rule 8(a)'s pleading requirements. It is plausible for the Court to infer that the Debtor's estate lost $44 million in funds in exchange for a note that was never intended to provide reasonably equivalent value to the Debtor.

44.     In sum, the FAC properly alleges facts to support a plausible claim of insolvency under both state and federal law.

**IV     The FAC Properly Alleges the Right to Clawback and Recover Avoided Transfers**

45.     Once a transfer is avoided, the thing avoided, or the value of that thing, can be recovered from the transferee, or from the entity whose entity for whose benefit to transfer was made. 11 U.S.C §548(d)(2)(A) & 11 U.S.C. §550. As the FAC properly pleads a basis to avoid

---

[7] *In re Prototype Eng'g & Mfg. Inc*., No. 2:17-BK-21018-RK, 2019 Bankr. LEXIS 4036, 2019 WL 9243004 (Bankr. C.D. Cal. Dec. 12, 2019) (denying motion to dismiss claims for constructive fraudulent transfer in part because "determination of insolvency is highly fact-specific and should be based on seasonable appraisals or expert testimony")

the One Year and Two Year Transfer, the FAC properly alleges the Trustee's right to recover the

Transfers for the benefit of creditors pursuant to 11 U.S.C §550 and California law.

## V.    The FAC Alleges Numerous Facts Supporting a Plausible Claim For Breach of Fiduciary Duties Owed By The Defendants to The Debtors

### A.    The FAC properly Pleads Facts Establishing Fiduciary Duties Owed by The Randhawas to the Debtor.

46.    The Motion claims that the only basis in the FAC for the existence of a fiduciary

duty owed by the Randhawas to the Debtors, rests on a single undocumented allegation. (Motion,

pg. 15) The statement is false. The FAC pleads numerous facts evidencing the Defendants

control, direction and management of the Debtors affairs which create fiduciary duties

demanding the highest duties of loyalty, care and good faith owed to the Debtors.

47.    Texas law recognizes two types of fiduciary relationships. The first, a formal

fiduciary relationship, "arises as a matter of law and includes the relationships between attorney

and client, principal and agent, partners, and joint venturers. *Navigant Consulting, Inc. v.*

*Wilkinson,* 508 F.3d 277, 283 (5th Cir. 2007) (citation). The second, an informal fiduciary

relationship, that "may arise where one person trusts in and relies upon another, whether the

relationship is a moral, social, domestic, or purely personal one." *Id.* See e.g., *Molex, Inc. v.*

*Nolen,* 759 F.2d 474, 479 (5th Cir. 1985) (applying Texas law and holding that a sales

representative had a fiduciary relationship with his employer). Texas law imposes fiduciary

duties to the entity subject to a party's control. Fiduciary duties are owed between a two tier

business structure. *Harwood v. FNFS, Ltd.*, 427 B.R. 392, 396-397 (E.D. Tex. 2010), aff'd *In re*

*Harwood*, 637 F.3d 615, 621 (5th Cir. 2011) ("the relevant issue should not be the choice of

organizational form…but rather an analysis of whether the degree of control actually exercised

over the subordinate entity warrants a corresponding recognition to assume responsibilities to the

entity"); *Brickley v. ScanTech Identification Beams Sys., LLC,* 566 B.R. 815, 849-850 (W.D.

Tex. 2017) (allegations of fraudulent transfers by co-CEO's to themselves and others states that

claim for breach of fiduciary duty); *Valley Ridge Roofing and Constr., LLC v. Silver State*

*Holdings,* 2020 Bankr. LEXIS 3531, 2020 WL 7414434 at *26, 30 (Bankr. N.D. Tex. 2020)

(finding that defendant manager breached his duty of loyalty by causing a fraudulent transfer

between two commonly owned companies).

  48. Here, the <u>Defendants themselves testified</u> as to the existence of the general

partnership between the Singhs and Defendants, their joint management of the operations of the

Debtors which they both established, owned and controlled. (FAC, ¶¶36, 37; filed claim nos.

Exhibit C & E, §1-3). The Defendants filed claims that document the "partnership" to operate the

Debtor, design and expand the business to include all Debtors, divide responsibilities, manage

and expand the business internationally. (*Id.*; FAC, ¶2) The FAC identifies the Defendants" titles

and roles as officers. (FAC, ¶¶19 & 20)  Defendants filed claims asserting to be owed  wages.

(FAC, Claim nos. 52, 54, C & E). Defendants filed a derivative claim for damages to the

business of the Debtors as owners to exceed  $22 million in lost profits.  (FAC, ¶¶36, 37; filed

claim nos. Exhibit C & E, §1-3). The filed claims make clear the allegations in the FAC are not

simply allegations. *In re Freeman–Clay*, 578 B.R. 423 (2017) (proofs of claim signed under

penalty of perjury carry evidentiary weight under Rule 3001(f) and create presumption of

signer's personal knowledge)[8]; *In re Perry*, 394 B.R. 852, 857 (Bankr. S.D. Tex. 2008)

(creditor's statement in proof of claim that oil and gas interests of debtor were "securities" found

to be a binding judicial admission in Section 510 adversary proceeding). Defendants' positions

create fiduciary duties demanding the utmost duty of loyalty, care, trust and confidence in

dealing with the Debtor. [FAC, ¶19]

---

[8]Each of the Randhawas filed two proofs of claim signed by each Defendant individually under penalty of perjury.

49.     Similarly, under the common law of most jurisdictions, including Texas, agency is also a special relationship that gives rise to a fiduciary duty. The Restatement (Second) of Agency sets forth in general terms the concept that "unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002). "The agreement to act on behalf of the principal causes the agent to be a fiduciary, that is, a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." (*Id.*) Defendants occupied titles, managed and oversaw various aspects of the business of the Debtors. [FAC, ¶¶2, 19, 20, 84].

50.     The Motion asserts that the Debtors do not have a holding company, or other corporate parent, and are owned solely by Kalvinder Singh. (Motion, pg. 15)  According to the Motion, the Trustee is judicially estopped from asserting otherwise. (*Id.*, citing to *Browning Mfg. v. Mims (In re Coastal Plains, Inc.*) 179 F.3d 197, 205(5th Cir. 1999). However, the purpose of the estoppel doctrine is "to protect the integrity of the judicial process", by "preventing parties from playing fast and loose with the courts to suit the exigencies of self interest". [9]To the contrary, here it is the Randhawas who filed proofs of claims documenting the existence of the partnership and Defendants' role in operating and managing the debtors. The Chief Restructuring Officer's First Day Declaration states it is a "a summary overview", not a litigated issue. (Dkt no. 5, ¶8)  As stated above in *Harwood v. FNFS, Ltd.*, 427 B.R. 392, 396-397 (E.D. Tex. 2010), in determining the creation of fiduciary duties, the relevant issue is not the organizational

---

[9] In *Browning Mfg.*, infra, the doctrine of judicial estoppel was applied following three (3) independent hearings, at which time the plaintiff led the defendant, other creditors and the bankruptcy court to believe the adversary proceeding was fully resolved when in fact they later asserted a $10M lawsuit (*Id.*, at 209).

form…but rather an analysis of the degree of control. The Singhs and the Randhawas operated the Debtors, as insiders.[10] *Browning Mfg*, is not analogous to the present facts.

B.  <u>Fiduciary Duties Are Breached When Insiders Enter Into Self-Interested Transactions Unfair To The Debtor, Concealing And Absolving Each Others Bad Acts, And Diverting Corporate Assets In Order To Enrich Themselves.</u>

51.     The Motion takes a last swing to in an effort to re-characterize the breach of fiduciary duty claim as a *Caremark* claim, a fringe claim, that requires dismissal of the First Cause of Action. (Motion, pg. 16) Under no reasonable reading of the FAC is the breach of fiduciary duty claim so limited.

52.     Actions taken by a fiduciary to drain a debtor of cash and properties through transfers to himself and his controlled entities are the very epitome of self-dealing, an interested party transaction, and a breach of the duty of loyalty. *Weiss v. Arabella Exploration Inc. (In re Arabella Petroleum Co., LLC,* 647 B.R. 851, 882 (Bankr. W.D. Tex. 2022) That a fiduciary would take these actions with full knowledge of the debtor's deteriorating financial condition establishes both bad faith and willful misconduct. *Id.* at 881. The <u>duty of loyalty</u> dictates that a director must act in good faith and must not allow his personal interests to prevail over the interests of the corporation. *Gearhart Indus. v. Smith Int'l*, 741 F. 2d 707, 719 (5th Cir. 1984).

53.     The FAC alleges self-dealing, an interested party transaction made with "full knowledge" of the debtor's deteriorating financial condition. [FAC, ¶44]  Under the law of Texas, as stated above, <u>bad faith and willful misconduct</u> evidences a breach of fiduciary duties.

---

[10] See *Jenkins  v. Tomlinson (In re Basin Resources Corp.*),182 B.R. 489, 492 (Bankr. ND Tex. 1995) (denying the application of the judicial estoppel doctrine as trustees must be free to handle each individual controversy separately in order to maximize the value of the estate. Treating all contested matters and adversary proceedings as one controversy and causing the statements made in one matter to be binding in all other matters would be inconsistent with this concept.)

54.     Defendants' citation to *Kanter v. Read,* 309 Cal Rptr. 3d 375, 388 (2nd Dist. 2023*), in an effort to label the First Cause of Action as an improper *Caremark* claim*, assuming arguendo Delaware law applied, does not insulate self-interested transactions.  First, the court in *Kanter v. Read*, *supra*, applied Delaware law, not the law of Texas. Second, the court noted a *Caremark claim* is rooted in concepts of bad faith, and the plaintiff failed to allege self-dealing or "deriving an improper benefit from a transaction" by the officers and directors in its oversight. *Id*. at 206-207.  Here, the FAC alleges the Singhs and Randhawas, engaged in a self-interested transactions to enrich and benefit themselves.  In addition, the executives transferred assets of the Debtors "between other entities which they owned and or controlled, such as the Big Rig Entities and Ontario Inc, in transactions that were undocumented, not at arms length, and self dealing." [FAC, ¶43] Ontario, Inc., a company the filed claim states is "owned by Sikander Singh Randhawa".  The filed claim recites how $6 million in assets were shuffled between the Big Rig Entities, Ontario, Inc., and the Debtors, entities the Randhawas owned and controlled. (FAC, Exhibit G, Addendum to Proof of Claim).  The fact pattern in *Kanter v. Read,* bears little semblance to facts outlined in the FAC.  The present case does not involve a derivative shareholder suit against 15 board members of a national supplier of natural gas alleging negligence.

55.     Similarly, under the law of most jurisdictions, the duty of care requires a director to be diligent and prudent in managing the corporation's affairs. *Gearhart Indus. v. Smith Int'l*, 741 F. 2d 707, 721 (5th Cir. 1984). Texas courts hold directors liable for negligent mismanagement of their corporations. *Id*.[11]  Unquestionably, under Texas law, a director as a

---

[11]The fiduciary obligations of corporate officers are often identical to those of directors. *Gearhart Indus. v. Smith Int'l*, 741 F. 2d 707, 719 (5th Cir. 1984).

fiduciary must exercise his unbiased or honest business judgment in pursuit of corporate interests. *Id*.

56.     The FAC alleges that the Defendants were required to use due care including their best efforts to preserve and operate the Debtors. [FAC ¶42] Instead, they enriched themselves at the expense of the Debtors and its creditors.

### CONCLUSION

57.     Plaintiff respectfully requests the Motion be denied in its entirety. Alternatively, should the Motion be granted to any degree, Plaintiff respectfully requests leave of Court to amend the FAC under Rule 15 of the Federal Rules of Civil Procedure, *Greater Houston Transp. Co. v. Uber Techs., Inc*., 155 F. Supp. 3d 670, 681(S.D. Tex. 2015)

Dated: February 17, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Teddy M. Kapur*
Teddy M. Kapur (SBT 24046186)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
tkapur@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Jeffrey P. Nolan (*pro hac vice application pnd*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
jnolan@pszjlaw.com

*Counsel to Plaintiff, the KAL GUC Liquidating Trust, by and through the duly authorized Liquidating Trustee, the duly appointed successor in interest to the Debtors created pursuant to the terms of the Plan.*